# Incorporation of Wayne Borough. Appeal of Howard O. Hildebrand.

*Borough incorporations—Regular adjournments in proceedings permissible.*

If the hearings in proceedings to incorporate boroughs are, upon reasonable grounds, regularly adjourned from time to time by the court, the spirit of the act is complied with, the purpose of the legislation being to give all persons interested an opportunity to be heard and to know when hearings are being held.

*Proceedings may not be referred to a master—Estoppel.*

The jurisdiction of the quarter sessions to incorporate boroughs is wholly statutory, and the manner in which such jurisdiction shall be exercised is clearly indicated by statute and confers no authority upon the court to refer the proceedings to a master. The doctrine of estoppel or implied waiver has no application to such cases.

Argued Nov. 21, 1899. Appeal, No. 47, Oct. T., 1899, by Howard O. Hildebrand et al., from decree of Q. S. Delaware Co., Dec. T., 1896, incorporating the borough of Wayne. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by W. D. PORTER, J.

Exceptions to petition incorporating a borough. Before CLAYTON, P. J.

It appears from the record that on November 2, 1896, certain inhabitants of the towns of Wayne and St. Davids, in Radnor township, Delaware county, filed a petition praying for the incorporation of said towns and territory, described in said petition by the style and title of the borough of Wayne. A number of remonstrances were filed to this petition, some against the incorporation and others praying for the exclusion of farm land. On December 10, 1896, the court upon its own

motion referred the petition and remonstrances to Orlando Harvey to take testimony, hear the parties interested and report to the court, the report to be filed on or before the first Monday of March next. On December 29, 1898, Orlando Harvey filed a report as master, with exceptions. On February 6, 1899, the court made the following order: "Regular continuances of the hearings before the master from time to time during the entire proceedings are hereby decreed, nunc pro tunc, the exceptions to the report of the master are dismissed, and from said report and testimony the court, after full investigation of the case, finds that the conditions prescribed by law have been complied with, and that it is expedient to grant the prayer of the applicants for a borough and do decree that the village named in said petition shall be incorporated into a borough in conformity with the prayer of the petitioners, excepting certain lands which are used for farming purposes and not properly belonging to the town, and which upon the request of the owners are excluded; and that the corporate style and title thereof shall be the Borough of Wayne." On January 2, 1899, the following exceptions were filed on behalf of the remonstrants to an incorporation:

1. The petition having been filed at December term, 1896, the court is now without power to make a decree of incorporation.

2. The court cannot make a decree of incorporation of a borough at a later period than the next term after the filing of the petition.

The court dismissed the exceptions, ruling that exceptants had waived this exception by appearing before the master without raising the question. Exceptants appealed.

*Errors assigned* were (1) the petition for incorporation having been filed at December term, 1896, the court below was without power to make a decree of incorporation more than two years thereafter, viz: February 6, 1899. (2) The court below could not make a decree for incorporation of a borough at a later period than the next term after the filing of the petition, viz: December term, 1896. (3) The court below had no power to make the order of December 10, 1896, viz: "December 10, 1896, referred to Orlando Harvey, Esq., to take testimony,

hear the parties interested and report to the court. Report to be filed on or about the 1st Monday of March, next." (4) The court failed to make a full investigation of the case, in accordance with the requirements of the Act of assembly of June 26, 1895, P. L. 389, under which application for incorporation is made. (5) The court below had no power to enter the following decree: " And now, February 6, 1899, regular continuances of the hearings before the master from time to time during the entire proceedings are hereby decreed, nunc pro tunc, the exceptions to the report of the master are dismissed, and from said report and testimony the court, after a full investigation of the case, finds that the conditions prescribed by law have been complied with, and that it is expedient to grant the prayer of the applicants for a borough, and do decree that the village named in said petition shall be incorporated into a borough in conformity with the prayer of the petitioners. Excepting the lands of Thomas B. Jones, Anna M. Jones and William H. Sayen, which are used exclusively for farming purposes, and not properly belonging to the town, and which, upon the request of the owners, are excluded." And that the corporate style and title thereof shall be the Borough of Wayne." (6) The court below was without authority to impose the costs of the hearings before the master, to wit: $1,171.25, upon the proposed borough. (7) The proceedings in the court below are irregular and void, because not in accordance with the requirements of the Act of June 26, 1895, P. L. 398, and should therefore be quashed.

*V. Gilpin Robinson* and *John B. Hannum*, with them *William B. Broomall*, for appellants.—When the legislature by the Act of June 26, 1895, P. L. 389, conferred upon the court of quarter sessions the power to create boroughs, it was subject to the observance of the requirements of this Act of March 21, 1806, 4·Sm. L. 326, sec. 13.

The directions of the act must, therefore, be " strictly pursued." How, then, is the incorporation (to use the words of the act) " directed to be done ? "

1. The court shall make a decree during the next " regular term " after the filing of the petition. It therefore had no power to make it more than two years thereafter.

The courts have uniformly insisted upon a strict compliance with the terms of all statutes providing remedies and methods of procedure, quashing the proceedings where such are not closely followed.

Acts for incorporation of boroughs, see Versailles Borough, 159 Pa. 43, and Linton Borough, 5 Pa. Superior Ct. 36.

2. The court is directed by the act to make "a full investigation of the case," etc., and had no power to shift this responsibility upon a master.

We have the right to demand (adopting the language of the Supreme Court in Middleton v. Middleton, 187 Pa. 612), that the "ability, learning and conscience of the court" shall be brought to the determination of the questions raised by the applications, and that the "weighty judicial responsibility," imposed by the act upon the court, "shall not be evaded by shifting it over to a member of the bar."

We know of no authority for the appointment of an auditor, master or examiner to take testimony and report in proceedings in the court of quarter sessions. Where in the statute or in practice did the court, upon its own motion, find warrant for the following order:

"December 10, 1896, referred to Orlando Harvey, Esq., to take testimony, hear the parties interested and report to the court. Report to be filed on or before the first monday of March next. T. J. C."

So rigorously has the Supreme Court insisted upon the compliance with these rules, that it has held in Palethrop v. Palethrop, 184 Pa. 585, and in Chester Traction Company v. P. W. & B. R. R. Co., 180 Pa. 432, that no acquiscence of the parties can give jurisdiction to a master who is appointed and who acts in violation of these rules.

This proceeding is a fair object lesson showing the wisdom of the legislature in directing that the investigation and decree shall be made at the next term, and, consequently, without the possibility of delay and unreasonable expense, and this court is asked to sustain this manifest intent by quashing these proceedings.

*Isaac Johnson*, for appellee.—In the case of Middleton v. Middleton, 187 Pa. 612, which was a suit in divorce, the court

below appointed a master to take testimony and report a decree. The Supreme Court said there was no authority for the appointment of a master, but that the court could have appointed an examiner.

They disregarded his recommendation as master, but examined the testimony he had taken and made a decree in accordance with the facts as they found them.

In one aspect the case is very much like the present one. Mr. Harvey was appointed to take testimony and report, he was not named as master. He reported, however, as master and suggested a decree, just as in the Middleton case.

When our court's attention was called to the fact that it could only make a decree after a full investigation, it disregarded his recommendation as master, took up the testimony just as the Supreme Court had done in the Middleton case, and after a full investigation made a decree.

The "ability, learning and conscience of the court" was brought to the determination of the questions raised by the application and the "weighty judicial responsibility" imposed upon the court was not evaded.

This case is not against the appellees, but in their favor.

This was the first application in Delaware county for incorporation of a borough, after the passage of the Act of June 26, 1895, P. L. 389.

Heretofore all applications had been first laid before the grand jury; if favorably reported and exceptions filed, the court appointed a master to whom the whole matter was referred. He heard all the parties in interest; exceptions were filed before him, which he heard and disposed of. These exceptions if insisted upon were afterwards argued before the court and final decree made.

This reference to a master was under and by virtue of the 3d section of the Act of April 1, 1834, P. L. 163.

After providing for reference to the grand jury, it says, "But if the court deem further investigation necessary, they shall take such order thereon as to right and justice may appertain."

It will be noticed that this statute does not authorize the appointment of a master, but Prospect Park Borough, Oesterle's Appeal, 166 Pa. 502, recognizes the propriety of such appointment.

As the decree taxing the costs was not made until after this appeal was taken and as there is an appeal pending here for the disposition of that question, no answer is made to appellants' argument on this question.

OPINION BY W. D. PORTER, J., January 17, 1900:

A petition was presented to the court below, on November 2, 1896, praying for the incorporation of the borough of Wayne. The notice required by law was given, and remonstrances were filed and petitions presented asking the exclusion of lands used exclusively for farming purposes, and not properly belonging to the village. The court, of its own motion, referred the whole proceeding under this order, viz: "December 10, 1896, referred to Orlando Harvey, Esq., to take testimony, hear the parties interested, and report to the court, the report to be filed on or before the first Monday of March next." The proceedings dragged along before the master for two years, and the report was filed on December 29, 1898. Exceptions to the report of the master were filed, and the court, after hearing arguments, filed an opinion and made this order, viz : " The exceptions are all dismissed and the report of the master is now confirmed and adopted as the act of the court; let a decree be drawn by counsel and submitted to the court for approval, costs to be paid by the borough." This order was signed by the court in the manner in which other orders in the case were signed, and the court, on July 10, 1899, by a formal decree, modified so much of it as related to the payment of costs. This order is undoubtedly a part of the record. The final decree was prepared in accordance with the recommendations of the master, and was in part, as follows :

"And now, February 6, 1899, regular continuances of the hearings before the master from time to time during the entire proceedings are hereby decreed, nunc pro tunc, the exceptions to the report of the master are dismissed, and from said report and testimony, the court, after a full investigation of the case finds that the conditions prescribed by law have been complied with, and that it is expedient to grant the prayer of the applicants," etc. The decree excludes certain farm lands. Upon the entry of the final decree, the remonstrants appealed.

If the hearings in proceedings to incorporate boroughs are,

upon reasonable grounds, regularly adjourned from time to time, by the court, the spirit of the act is complied with, the purpose of the legislation being to give all persons interested an opportunity to be heard and to know when hearings are being held. The first and second specifications of error are dismissed.

The third, fourth and fifth specifications of error may be considered together. They all go to the action of the court in referring the proceedings to a master and founding the final decree upon the master's report. It is idle to discuss whether Mr. Harvey was appointed a master or an examiner. He was not appointed to take testimony of witnesses merely; but the case was referred to him to take testimony, hear the parties interested, and report to the court. These are the duties of a master. The appointee so considered his office and, accordingly, acted and reported as master. What is more material, however, when the report of the master was presented, with findings of fact and conclusions as to expediency, the court treated and designated it as a master's report, and "adopted it as the act of the court," and, finally, founded upon it the decree of incorporation.

The jurisdiction of the court of quarter sessions to incorporate boroughs is wholly statutory. Under the provisions of the Act of April 1, 1834, P. L. 163, the petition for incorporation was laid before the grand jury, and it was required that a majority of said grand jury should find, after a full investigation of the case, that the conditions prescribed by the act had been complied with, and that it was expedient to grant the prayer of the petitioners. The law so remained until changed by the Act of June 26, 1895, P. L. 389, which, after providing for notice and the filing of exceptions, enacted: "And the court at said term, after a full investigation of the case, if it shall find that the conditions prescribed by law have been complied with and shall believe that it is expedient to grant the prayer of the applicants, shall grant the same and make a decree accordingly."

The second section of said act repeals all laws requiring the laying of the application before the grand jury. The law vests in the judges of the court of quarter sessions the discretion to determine all questions of fact and expediency arising in pro-

ceedings to incorporate boroughs; the result of the exercise of that discretion is not reviewable by the appellate court, unless in case of an abuse of discretion distinctly charged and clearly established, and there is no appeal upon the merits. So long as the record is formally correct, the court of quarter sessions has the power to determine finally the form of local government which shall prevail within the limits of the proposed borough. This is a power which touches the interests of all who reside or own property in the proposed borough, or the township from which it is taken. Such a power, founded upon statute, must be exercised strictly within the lines of the legislation from which it is derived. Recognizing the character of the jurisdiction, as affecting public interests, GIBSON, C. J., in Borough of West Philadelphia, 5 W. & S. 281, doubted the wisdom of the legislation by which it was conferred. While the legislature has conferred upon the judges of the court of quarter sessions these extensive powers and imposed corresponding duties, there is not a line of legislation which authorizes them to appoint some private individual to perform said duties and exercise said powers. As was said in Middleton v. Middleton, 187 Pa. 612: "It never was intended that judicial function should in any material degree be relinquished by conducting the proceedings before a master in his office, or that weighty judicial responsibility should be evaded by shifting it over to a member of the bar. We feel that a careful perusal of the statutes will convince any one of the correctness of these observations. The ability, learning and conscience of the court must be called into exercise."

The court derived its powers from the Act of June 26, 1895, P. L. 389, which enacts: "And the court at said term, after a full investigation of the case, if it shall find that the conditions prescribed by law have been complied with, and shall believe that it is expedient to grant the prayer of the applicants, shall grant the same and make a decree accordingly." The power thus given is specific. It is to fully investigate the case. This would involve an examination of the record, hearing the parties interested and such testimony as they produced. If such investigation convinces the court, then the court finds the facts and decrees accordingly. The decree must be founded in the belief of the court resulting from its own investigation. It is

not sufficient that the facts have been proved to the satisfaction of a master, by witnesses whom the court neither saw nor heard.

The manner in which the jurisdiction of the court of quarter sessions to incorporate boroughs shall be exercised is clearly indicated by the statute, and confers no authority upon the court to refer the proceedings to a master. In this case, the proceedings were not only referred to a master, but the decree is founded upon the master's report. This was without authority of law: Forbes Street, 70 Pa. 125; Middleton v. Middleton, 187 Pa. 612. The learned court below, in an opinion filed with the supplemental decree of July 10, 1899, held that, as the parties had appeared before the master, they had waived all objections to his appointment. The same state of facts arose in both of the cases above cited, and the question of the jurisdiction of the court to appoint a master was first suggested in the Supreme Court. "Proceedings for the incorporation of a borough are not in the nature of a private litigation; the court has a public duty which no action of a portion of the community, no matter how large, can excuse it from performing. The doctrine of estoppel or implied waiver has no application to such cases:" Linton Borough, 5 Pa. Superior Ct. 36. The parties in the present case went before the master because the court, without the consent of any person, so far as shown by the record, had referred the whole proceeding to that master. There is no force in the suggestion that the master be considered as having acted as an examiner to take testimony, and that the decree may be sustained upon the theory that the testimony may have been read by the court. The answer to this is in the decree: "The exceptions to the report of the master are dismissed, and from said report and testimony the court, after a full investigation of the case, finds," etc. The decree declares upon its face that it is in part founded upon the report of the master. We cannot determine the extent to which the report of the master influenced the court; the opening sentence of the opinion of the court is: "The exhaustive report of the master so completely answers all the exceptions filed touching the merits of the case as to render further comment unnecessary," which indicates that the report settled every question which, under the law, ought to have been the subject of the exercise

of the discretion of the court. It is true that the opinion is no part of the record, but this opinion demonstrates the importance of adhering strictly to the mode of procedure indicated and confining the jurisdiction within the limits authorized by law. The third and fifth specifications of error are sustained.

Decree reversed.

